*Bouchard v. Menard*, No. 682-10-15 Wncv (Tomasi, J., June 15, 2016).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 682-10-15 Wncv |

| | |
|---|---|
| Michael Bouchard,<br>     Plaintiff<br><br>v.<br><br>Lisa Menard,<br>     Defendant | |

### Opinion and Order on Cross-Motions for Summary Judgment

In this petition for review of governmental action under Vt. R. Civ. P. 75, Plaintiff Michael Bouchard seeks review of Defendant Commissioner Lisa Menard's (the "Department's") imposition of a disciplinary conviction against him based on allegations that he wrongfully consumed drugs in a correctional facility. Plaintiff asserts that there was insufficient evidence to support the hearing officer's determination of guilt because one of the urinalysis tests performed on him did not comply with the Department's chain-of-custody requirements.

Plaintiff has moved for summary judgment on that basis. The Department has cross-moved for summary judgment arguing that the evidence is sufficient to find Plaintiff guilty even in the absence of the urinalysis and that, in any event, the urinalysis substantially complied with any chain-of-custody demands. Plaintiff is represented by Kelly Green, Esq., of the Prisoners' Rights Office. The Department is represented by Assistant Attorney General Andrew Gilbertson. The Court held a hearing on the motions on June 14, 2016. After considering the parties' argument,

memoranda, and the summary judgment record, the Court makes the following determinations.

## Summary Judgment Standard

Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, party fails to make showing sufficient to establish essential element of the case on which the party will bear burden of proof at trial). Where there are cross-motions for summary judgment, as here, "both parties are entitled to the benefit of all reasonable doubts and inferences." *Montgomery v. Devoid*, 2006 VT 127, ¶ 9, 181 Vt. 154, 156.

The Court derives the undisputed facts from the parties' statements of fact submitted under Vt. R. Civ. P. 56(c)(1)(A), and the supporting documents.[1] *Boulton v. CLD Consulting Engineers*, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts or affidavits to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991).

---

[1] In this case, despite the possible procedural problems presented by it—including the lack of clarity as to which facts are actually contested—the Court accepts the "printed case" employed by the parties as the summary ju dgment record.

2

In this instance, the Court's examination is further cabined by Vt. R. Civ. P. 75. Rule 75 allows judicial review of governmental administrative decisions, but only "if such review is otherwise available by law." While the case law interpreting Rule 75 has insulated the overwhelming majority of discretionary administrative decisions made by the Department from judicial review, *see, e.g., Rheaume v. Pallito*, 2011 VT 72, ¶ 11, 190 Vt. 245, 250, the Court may still review quasi-judicial decisions in accordance with the principles of *certiorari* review. *Id.*

The scope of *certiorari* review under Rule 75 is very narrow. "[W]hen reviewing administrative action by the [Department] under V.R.C.P. 75, we will not interfere with the Department's determinations absent a showing that the [Department] clearly and arbitrarily abused its authority." *King v. Gorczyk*, 2003 VT 34, ¶ 7, 175 Vt. 220, 224; *Molesworth v. University of Vermont*, 147 Vt. 4, 7 (1986) (*certiorari* review "confined to addressing substantial questions of law affecting the merits of the case.").

More specifically, in the context of reviewing disciplinary determinations made in the prison setting, the Vermont Supreme Court has adopted the standards set forth by the United States Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). *LaFaso v. Patrissi*, 161 Vt. 46, 49 (1993). Although due process requires the Department to prove inmate disciplinary infractions by a preponderance of the evidence at the disciplinary hearing, *id.* at 51, under *Hill*, this Court will uphold a disciplinary determination if "there is *any evidence* in the record to support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *King*, 2003 VT 34, ¶ 7, 175 Vt. at 224 (noting same); *LaFaso*,

161 Vt. at 49 (prison determination "must be upheld if it is supported by 'some evidence' in the record" (citation omitted)).

As the *Hill* Court concluded, "[r]equiring a modicum of evidence to support a decision [of a disciplinary board] . . . will help to prevent arbitrary deprivations without threatening the institutional interest or imposing undue administrative burdens." 472 U.S. at 455. Accordingly, in this case, the disciplinary decision will be affirmed if it is supported by "any evidence" in the record. *King*, 2003 VT 34, ¶ 7, 175 Vt. at 224.

## Factual Background

The summary judgment record establishes that, on August 22, 2015, Corrections Officer (CO) Thomas noticed that Plaintiff was acting strangely. His recorded observations established that he believed Plaintiff was high, and he requested that Plaintiff provide a urine sample for a drug test. Printed Case (PC) at 18.

Plaintiff reported to the area where such tests were conducted. CO Caffrey administered the test, and Plaintiff provided a urine sample at approximately 2:05 a.m. PC at 19. That sample immediately tested positive for Buprenorphine. *Id*. CO Caffrey's report indicates that he sealed a second sample provided by Plaintiff and later mailed it to the lab. *Id*. It confirmed that Plaintiff had consumed Buprenorphine. *Id*.

Plaintiff asserted at the hearing, and repeats here, that the Department failed to establish a proper chain of custody. He noted that CO Thomas' report indicates he was sent to provide a sample at 7:59 p.m., but CO Caffrey's report indicates that provided a sample at 2:05 a.m. He next asserts that, at various

4

points, CO Caffrey's reports assert that the sample was taken at 2:05 a.m. or 20:05. Plaintiff also asserts that the chain-of-custody form contains the handwriting of two persons, which, he asserts, raises questions as to its authenticity.

The Department considered those objections and determined that they amounted to typographical and clerical errors. Based on all the evidence, the Department concluded that there had been substantial compliance with the chain-of-custody rules and that the test results were reliable. PC at 13.

## Analysis

The Vermont Rules of Evidence do not apply in disciplinary proceedings. But, defects in chains of custody are not necessarily fatal to the admission of testing results even where the Rules of Evidence do apply. *See State v. Comstock*, 145 Vt. 503, 5–6 (1985). As the Supreme Court has held:

> a chain of custody need not be established perfectly; imperfections go to the weight, not the admissibility. *State v. Mecier*, 138 Vt. 149, 153, 412 A.2d 291, 294 (1980). Rather, the circumstances need to establish only a "reasonable assurance" that the evidence is authentic and has not been tampered with. *State v. Stevens*, 137 Vt. 473, 477, 408 A.2d 622, 625 (1979).

*State v. Pratt*, 2015 VT 89, ¶ 33. Any failure to comply perfectly with chain-of-custody rules established by the Department should be treated in like manner. *King*, 2003 VT 34, ¶ 9, 175 Vt. at 225 (rejecting claim that violation of Department chain-of-custody rule required a reversal and holding that: "The identity of a specimen used in drug testing need not be proved beyond all possibility of doubt to be admissible…. The circumstances need establish only reasonable assurance of the identity of the sample tested.").

In this instance, Plaintiff raised the chain-of-custody deficiencies described above during the hearing and on appeal. The Department considered them and concluded, in essence, that any such defects did not impact the admissibility of the results but went to their weight. PC at 13.

The Department's determination in that regard is supported by the record. The report of CO Thomas does not specify a particular time when Plaintiff was asked for a urine sample, and the time signature may have been when CO Thomas wrote the report, or it may have been a typographical error. Similarly, the confusion over whether the time was 02:05 or 20:05 is explained by the records themselves. In two places it is evident that CO Caffrey actually corrected his initial error of writing 20:05 and wrote 02:05. *Id*. at 21 & 22. The Hearing Officer could have easily relied on those corrections and the other places where the 02:05 time is indicated, *id*. at 19, as proof that 02:05 was the correct time.

Lastly, the Hearing Officer could have relied on CO Caffrey's entries on the chain-of-custody form as establishing that he had taken Plaintiff's sample, stored it, and mailed it to the lab. Given that evidence, and the lack of any competing narrative submitted by Plaintiff, the Court cannot conclude that the Department erred in finding a sufficient chain of custody in this case. *King*, 2003 VT 34, ¶ 9, 175 Vt. at 225.

In light of the evidence contained in CO Thomas' report, the initial urinalysis, and the confirmatory lab analysis, there is easily enough evidence to support the guilty finding in this case. *LaFaso*, 161 Vt. at 49.

WHEREFORE, the conviction is affirmed.

6

Dated at Montpelier, Vermont, this ___ day of June, 2016.

 

 

_____\
Timothy B. Tomasi
Superior Court Judge